UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 14-CV-1476 (CCC) |
| | ) | |
| THE MUNICIPALITY OF SAN JUAN, THE PUERTO RICO DEPARTMENT OF NATURAL AND ENVIRONMENTAL RESOURCES, THE PUERTO RICO DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS, THE PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY and THE COMMONWEALTH OF PUERTO RICO, | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATION AND ORDER**

WHEREAS, Plaintiff United States of America ("United States") filed the Complaint in this action on June 16, 2014. The United States effected service of the Complaint on Defendant Puerto Rico Department of Transportation and Public Works ("DTPW") on October 14, 2014. Before DTPW's time to answer or otherwise plead had expired, on November 17, 2014, the United States filed the First Amended Complaint, adding claims against DTPW's subsidiary agency, the Puerto Rico Highway and Transportation Authority ("HTA"). Pursuant to several unopposed requests for extensions of their time to answer, the deadline for DTPW's time to answer is presently February 17, 2015; and the deadline for HTA's time to answer is presently February 27, 2015.

1

WHEREAS, the United States and DTPW/HTA seek to stay pre-trial matters in this action through April 14, 2015 to pursue negotiations on injunctive relief and civil penalties in resolution of the claims asserted against DTPW/HTA in this action.

WHEREAS, the United States and DTPW/HTA believe that it would conserve time, resources, and serve judicial economy to pursue settlement negotiations without the need to pursue litigation during the pendency of the stay.

NOW, THEREFORE, the United States and DTPW/HTA (hereinafter "Parties"), by and through their undersigned attorneys, agree and stipulate to the following:

1. Except as may be specified below, the terms used in this Stipulation and Order shall have the same meaning as provided in Section 502 of the Clean Water Act ("Act"), 33 U.S.C. § 1362, as amended.

## JURISDICTION, VENUE, DEFENDANTS

2. This Court has jurisdiction over the subject matter of this action and the Parties pursuant to Sections 309(b), (d), and/or 504(a) of the Act, 33 U.S.C. §§ 1319(b), (d), and/or 1364(a), and pursuant to 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this judicial district pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395.

4. Notice of the commencement of this action has been given to the Commonwealth of Puerto Rico pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b).

5. DTPW is an executive department of Puerto Rico under the Laws of Puerto Rico, 3 L.P.R.A. §§ 411 et seq.

6. DTPW is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

7. Defendant HTA is a public corporation under the Laws of Puerto Rico, 9 L.P.R.A. S 2002.

8. HTA is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

9. DTPW/HTA own and/or operate an MS4 with certain functions performed by and through subsidiary agencies, authorities or directorates, including but not limited to the HTA and the Public Works Directorate.

10. Portions of DTPW/HTA's MS4 are located within the municipal boundaries of San Juan, including but not limited to those sewers servicing Puerto Rico State Roads PR-25, PR-26, and PR-37.

11. Section 309(e) of the Act, 33 U.S.C. § 1319(e), provides:

> Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment or any expenses incurred as a result of complying with any such judgment entered against the municipality in such action, to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.

12. Puerto Rico is a "State" for the purposes of Section 502(3) of the Act, 33 U.S.C. §1362(3).

13. Puerto Rico is joined in this action pursuant to Section 309(e) of the Act, 33 U.S.C. § 1319(e) and because DTPW is an instrumentality of Puerto Rico.

## APPLICABLE STATUTORY AND REGULATORY PROVISIONS

14. Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutants into navigable waters of the United States by any person except in compliance with the requirements of that section, including as authorized by and in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

15. Section 502(12) of the Act, 33 U.S.C. § 1362(12), defines the term "discharge of a pollutant" to mean, among other things, "any addition of any pollutant to navigable waters from any point source . . . ."

16. Section 502(5) of the Act, 33 U.S.C. § 1362(5), defines the term "person" as: "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State or any interstate body."

17. Section 502(6) of the Act, 33 U.S.C. § 1362(6), defines the term "pollutant" to include sewage, biological materials, and municipal waste.

18. Section 502(7) of the Act, 33 U.S.C. § 1362(7), defines the term "navigable waters" to be "waters of the United States, including its territorial seas." EPA regulations promulgated pursuant to the Act define the term "waters of the United States" to include, among other things: (1) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (2) all interstate waters; (3) all other waters such as intrastate lakes, rivers and streams (including intermittent streams), the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce; (4) tributaries of waters of the United States; and (5) certain wetlands (including wetlands adjacent to these waters). 40 C.F.R. § 122.2.

19. Section 502(14) of the Act, 33 U.S.C. § 1362(14), defines the term "point source" as "any discernible, confined and discrete conveyance, including, but not limited to, any pipe, ditch, channel, tunnel, conduit, well, or discrete fissure from which pollutants may be discharged."

20. Under Section 402(a) of the Act, 33 U.S.C. § 1342(a), the Administrator of the EPA ("Administrator") may issue a NPDES permit that authorizes the discharge of pollutants into waters of the United States, provided that all discharges meet the applicable requirements of Section 301 of the Act, 33 U.S.C. § 1311, or such other conditions as the Administrator determines are necessary to carry out the provisions of the Act.

21. Section 402(p) of the Act, 33 U.S.C. § 1342(p), sets forth the requirements for the discharge of storm water, including discharges of storm water from MS4s.

22. 40 C.F.R. §122.26(b)(8), defines an MS4 as a "conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains): (i) owned or operated by a city, town, borough, county, parish, district, association, or other public body (created by State law) . . . that discharges into waters of the United States; (ii) designed or used for collecting or conveying storm water; (iii) which is not a combined sewer; and (iv) which is not part of a Publicly Owned Treatment Works..."

23. 40 C.F.R. § 122.26(b)(16)(ii) defines a "small municipal separate storm sewer system," in part, as "not defined as 'large' or 'medium' municipal separate storm sewer systems pursuant to paragraphs (b)(4) and (b)(7) of this section, or designated under paragraph (a)(1)(v) of this section."

24. Pursuant to 40 C.F.R. § 122.32(a)(1), all small MS4s located in an "urbanized area" (as determined by the latest Decennial Census by the Bureau of Census) are regulated small MS4s.

40 C.F.R. § 122.33(a) and (b) require operators of regulated small MS4s to seek authorization to discharge under the applicable NPDES general permit issued by the permitting authority, by submitting a notice of intent for coverage under such permit.

25. Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction when any person violates, among other things, Section 301, 33 U.S.C. § 1311, or violates any of the terms or conditions of an NPDES permit, issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

26. Section 309(d) of the Act, 33 U.S.C. § 1319(d), provides that any person who violates, among other things, Section 301 of the Act, 33 U.S.C. § 1311, or violates any of the terms or conditions of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.

27. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2641 note: Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvements Act of 1996 (31 U.S.C. § 3701 note: Pub. L. 101-134, enacted April 26, 1996, 110 Stat. 1321), EPA promulgated the Civil Monetary Penalty Inflation Adjustment Rule. Under that rule, EPA may seek civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, up to $37,500 per day for each violation occurring after January 12, 2009 through December 6, 2013, and up to $37,500 per day for each violation occurring after December 6, 2013. See 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 73,345 (Dec. 11, 2008); 78 Fed. Reg. 66,643 (Nov. 6, 2013); 40 CFR § 19.4, Table 1.

28. Section 504(a) of the Act, 33 U.S.C. § 1364(a), authorizes the Administrator to commence a civil action for injunctive relief upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health or welfare of persons.

29. On or about September 2, 2006, pursuant to Section 402 of the Act, 33 U.S.C. § 1342, EPA issued the NPDES General Permit for Discharges from Small MS4s, effective November 6, 2006 ("MS4 General Permit").

30. Under Section 6.2 of the MS4 General Permit, the permit expired on November 6, 2011, but remains in full force and effect because EPA has not replaced or re-issued it or determined that it will not be replaced or reissued.

31. Under Section 1.5.1 of the MS4 General Permit, all regulated small MS4s must submit a notice of intent to be covered under the permit, or to apply for an individual permit by February 5, 2007.

32. DTPW/HTA own and operate a small MS4 in Puerto Rico a portion of which flows into San Juan's MS4 storm sewers and/or DNER pump stations, which ultimately discharge to various bodies of water including bodies of water within and comprising the San Juan Bay Estuary.

33. DTPW/HTA's MS4 includes storm sewers constructed and operated as part of transportation related infrastructure in Puerto Rico, including but not limited to storm sewers that service the Baldorioty de Castro Avenue (PR-26), De Diego Avenue (PR-37), and Ponce de León Avenue (PR-25), storm sewers that service state roads tributary to the DNER Baldorioty de Castro Pump Station, storm sewers that service state roads tributary to the DNER Stop 18 Pump

Station (also known as Barriada Figueroa Pump Station), and storm sewers that service state roads tributary to the DNER De Diego Pump Station.

34. DTPW/HTA's MS4 is intended to convey storm water runoff to prevent flooding during wet weather events.

35. DTPW/HTA's MS4 is a regulated small MS4 pursuant to 40 C.F.R. § 122.32(a)(1).

36. DTPW and HTA jointly submitted a notice of intent to have discharges from its MS4 covered under the MS4 General Permit on November 4, 2011.

37. The MS4 General Permit at Sections 1.3.1 and 1.4 does not authorize DTPW/HTA to discharge non-storm water from its MS4 unless the non-storm water discharges are among particular exceptions listed in the MS4 General Permit, including landscape irrigation, diverted stream flow, groundwater, dechlorinated swimming pool discharges, and street wash water.

## STUDIES

38. In August 2006, Science Applications International Corporation ("SAIC") provided support to EPA by conducting sampling at several storm water pump stations (the "August 2006 Sampling Inspection").

39. In August 2008, SAIC provided support to EPA by conducting sampling at various locations within the Municipality of San Juan, including San Juan's MS4 and DTPW's MS4 (the "August 2008 Sampling Inspection").

40. In December 2009, CSA Architects and Engineers, LLP issued a final report of a flood control study to San Juan entitled, "Estudio del Problema de Inundaciones en el Municipio de San Juan, Puerto Rico" ("CSA Report").

41. In March and April 2011, Eastern Research Group, Inc. ("ERG") provided support to EPA, including, but not limited to, conducting sampling at various locations within the Municipality of San Juan and receiving waters (the "March 2011 Sampling Event").

42. In June 2011, EPA conducted a Reconnaissance Inspection of San Juan's Barrio Obrero and Buena Vista Pump Stations (the "June 2011 Reconnaissance Inspection").

43. In February, March and April 2012, EPA conducted Reconnaissance Inspections of portions of the Juan Méndez Creek and the DNER Baldorioty de Castro Pump Station drainage area, Monroig Avenue, Buena Vista Creek, Rio Piedras River, San Antón Creek, Puerto Nuevo Channel, and Doña Ana Creek watersheds (the "Spring 2012 Reconnaissance Inspections").

44. In April and May 2012, DNER conducted sampling at the De Diego, Baldorioty de Castro, and Stop 18 Pump Stations at the United States' request and provided the results to EPA (the "May 2012 DNER Sampling Event").

45. In June, July, August, and October 2012, EPA conducted Reconnaissance Inspections of portions of the Rio Piedras River, Doña Ana Creek, San Antón Creek, Juan Méndez Creek, Puerto Nuevo Channel, Sabana Llana Creek, Josefina Creek, Mongil Creek, Del Ausubo Creek, Buena Vista Creek, and the DNER De Diego Pump Station watersheds (the "Summer/Fall 2012 Reconnaissance Inspections").

46. Between October 2012 and August 2013, San Juan conducted sampling events at various outfalls in the San Juan municipal area, including but not limited to San Juan's Buena Vista Pump Station, storm sewer outfalls to the Martin Peña Channel at Calle 10, Calle 13 and the Barrio Obrero Pump Station (the "2012 San Juan Sampling Events").

47. In December 2012, DNER conducted sampling events at three DNER pump stations (the "December 2012 DNER Sampling Event").

48. In April, July, and September 2013, EPA conducted Reconnaissance Inspections of storm sewers in and around the Condado watershed and of storm sewers along the Baldorioty de Castro Avenue (PR-26) and De Diego Avenue (PR-37) and the Stop 18 Pump Station (the "2013 Reconnaissance Inspections").

## AFFECTED WATERS

49. Martín Peña Channel is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

50. Los Corozos Lagoon is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

51. The Puerto Nuevo Channel is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

52. The Rio Piedras River is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

53. The Buena Vista Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

54. The Sabana Llana Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

55. The Doña Ana Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

56. The Mongil Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

57. The Del Ausubo Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

58. The Josefina Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

59. The San Antón Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

60. The San Jose Lagoon is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

61. The Buena Vista Creek is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

62. The San Juan Bay is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

63. The Atlantic Ocean is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

### DTPW/HTA'S UNPERMITTED DISCHARGE OF NON-STORM WATER FROM THE VACUUM SEWER SYSTEM

64. DTPW, acting either on its own behalf or through its subsidiary agency the HTA, and/or HTA designed and constructed a Vacuum Sewer System to service certain areas in the La Marina Sector of Barrio Obrero within the municipality of San Juan, from the southern portion of Rexach Avenue to Brasil Street to Cortijo Street, up to the Martin Peña Channel, but excluding Street No. 8 which has its own system.

65. The Vacuum Sewer System is designed to convey sanitary wastewaters, under negative pressure and through pipes ranging between 4 and 6 inches in diameter, from the sources of the sanitary wastewaters to the pump station located at the La Marina Sector of Barrio Obrero which is operated by HTA, to a wastewater treatment facility owned and operated by the Puerto Rico Aqueduct and Sewer Authority ("PRASA").

66. A reconnaissance inspection conducted jointly by EPA and San Juan on September 5, 2012 identified a broken Vacuum Sewer System pipe on Argentina Street that, because it crosses San Juan's MS4, discharges wastewater directly into the San Juan MS4.

67. Subject to Paragraphs 76-79 (Reservations of Rights), DTPW/HTA are, therefore, liable for one violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, arising from the design, construction, and operation of the Vacuum Sewer System.

### DTPW/HTA'S UNPERMITTED DISCHARGE OF NON-STORM WATER INTO THE BALDORIOTY DE CASTRO PUMP STATION

68. A portion of DTPW/HTA's MS4 conveys flow into the DNER Baldorioty de Castro Pump Station.

69. Investigations indicate that the box sewer that contributes flows to the Baldorioty de Castro wet well was designed and built by DTPW's predecessor agency, the Puerto Rico Department of Public Works.

70. Subject to Paragraphs 76-79 (Reservations of Rights), DTPW/HTA are liable for one violation of the MS4 General Permit arising from the discharge of contaminated stormwater from the DTPW/HTA MS4 into the DNER Baldorioty de Castro Pump Station.

### DTPW'S UNPERMITTED DISCHARGE OF NON-STORM WATER INTO THE DE DIEGO PUMP STATION

71. A portion of DTPW/HTA's MS4 conveys flow into the DNER De Diego Pump Station.

72. Subject to Paragraphs 76-79 (Reservations of Rights), DTPW/HTA are liable for one violation of the MS4 General Permit arising from the discharge of contaminated stormwater from the DTPW/HTA MS4 into the DNER De Diego Pump Station.

## DTPW/HTA'S UNPERMITTED DISCHARGE PRIOR TO NOVEMBER 4, 2011

73. Under Section 1.5.1 of the MS4 General Permit, all regulated small MS4s must submit a notice of intent to be covered under the permit, or to apply for an individual permit by February 5, 2007.

74. DTPW and HTA jointly submitted a notice of intent to have discharges from its MS4 covered under the MS4 General Permit on November 4, 2011.

75. Subject to Paragraphs 76-79 (Reservations of Rights), DTPW/HTA are liable for one violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, arising from the unpermitted discharge of stormwater from the DTPW/HTA MS4 prior to November 4, 2011.

## RESERVATIONS OF RIGHTS

76. Except as set forth herein, nothing in this Stipulation and Order shall be construed to limit DTPW/HTA's defenses to the United States' claims for civil penalties or injunctive relief should the Parties to this Stipulation be unable to agree to terms of a Consent Decree during the pendency of the stay of this action.

77. Nothing in this Stipulation and Order shall be construed to limit the rights of the United States concerning DTPW/HTA's liability for violations of the Act in addition to those set forth herein should the Parties to this Stipulation be unable to agree to terms of a Consent Decree during the pendency of the stay of this action.

78. Nothing in this Stipulation and Order shall be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, facilities owned and/or operated by

DTPW/HTA, whether related to the violations alleged in the First Amended Complaint or otherwise.

79. Nothing in this Stipulation and Order is intended or shall be construed to create any rights in persons not a party to this Stipulation and Order.

## NEGOTIATIONS AND STAY OF PRE-TRIAL MATTERS

80. Following entry of this Stipulation and Order with the Court, all pre-trial matters in this proceeding between the United States and Defendants DTPW and HTA shall be stayed through April 14, 2015; and during this period, the United States and DTPW/HTA shall negotiate in good faith in an effort to agree on terms of a consent decree, which must thereafter be approved by appropriate government officials, made available for public comment, and approved by this Court.

81. If the Parties are unable to reach an agreement such that a Consent Decree is lodged with the Court on or before April 14, 2015, DTPW/HTA's answer or responsive pleading shall be due on April 30, 2015, unless the Parties submit a joint request for a further stay of the litigation. In such case, the United States shall submit a status report to the Court on or before April 14, 2015.

82. The Parties agree that all terms of this Stipulation and Order shall be binding on the parties as of the dates of their signature, regardless of whether the Court enters the Order.

83. The Parties hereby consent to the entry by the Court of this Stipulation and Order in this action.

**SO ORDERED.**

Dated: _____
CARMEN CONSUELO CEREZO
UNITED STATES DISTRICT JUDGE

*For the United States of America*,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date: Feb. 18, 2015

/s/Keith T. Tashima
_____
KEITH T. TASHIMA (No. G01908)
BETHANY ENGEL
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 616-9643 (Tashima)
(202) 514-6892 (Engel)


ROSA E. RODRIGUEZ-VELEZ
United States Attorney
District of Puerto Rico


HECTOR E. RAMIREZ
Assistant United States Attorney
District of Puerto Rico
Federal Office Building, Suite 1201
350 Carlos E. Chardón Avenue
San Juan, Puerto Rico 00918
hector.e.ramirez@usdoj.gov

Of Counsel:

KIM M. KRAMER
EDUARDO J. GONZALEZ
Assistant Regional Counsel
Office of Regional Counsel
United States Environmental Protection Agency
290 Broadway-16th Floor
New York, NY 10007
kramer.kim@epa.gov
gonzalez.eduardoj@epa.gov


CLARKE THURMON
Attorney-Advisor
Water Enforcement Division, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460
thurmon.clarke@epa.gov

*For Defendants Department of Transportation
and Public Works
and the Commonwealth of Puerto Rico*

Date: February 17, 2015     ***/S/Karín G. Díaz-Toro***
KARÍN G. DÍAZ-TORO
USDC-PR-203008
Torres & García, P.S.C.
PO Box 19539
San Juan, PR 00910-1539
kdiaz@envirolawpr.com

*For Defendant Puerto Rico Highway and Transportation Authority*

Date: February 17, 2015     ***/S/Yasmin M. Santiago Zayas***
YASMIN M. SANTIAGO ZAYAS
USDC-PR-211503
Parkville Wilson N-21
Guaynabo, PR 00969
santiagoym@microjuris.com